Rickman, Judge.
In this premises liability action, Precious Donastorg sued Rainbow USA, Inc., to recover monetary damages for injuries she allegedly received after stepping on an anti-theft sensor pin while shopping in a clothing store owned and operated by Rainbow. The trial court granted summary judgment in favor of Rainbow upon concluding that Rainbow lacked superior knowledge of the hazard that injured Donastorg. Donastorg argues that genuine issues of material fact remain as to Rainbow’s knowledge of the hazard such that the grant of summary judgment in its favor was improper. We agree and reverse.
We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. A defendant may obtain summary judgment by showing an absence of evidence supporting at least one essential element of the plaintiff’s claim.
*216 (Citations omitted.) Kennestone Hosp. v. Harris, 285 Ga. App. 393, 393-394 (646 SE2d 490) (2007).
The pertinent facts in this case are largely undisputed. The record shows that shortly after 4:00 on the afternoon in question, Donastorg was shopping with her daughter at a Rainbow clothing store when she stepped on an anti-theft sensor pin located on the store’s floor. Donastorg stepped on the pin with her left foot as she removed an item of clothing from the clothing rack and held it up to her daughter. The pin, approximately the size of a thumb tack, went through Donastorg’s sandal and punctured her foot, allegedly causing permanent nerve and/or tissue damage.
Donastorg deposed that, at the time of the incident, a Rainbow employee was unloading new inventory immediately to Donastorg’s right, and three additional employees were standing behind the cash registers approximately four to five feet away. Neither Donastorg nor any of the Rainbow employees saw the pin prior to Donastorg stepping on it, and it is unknown how the pin got onto the floor or when it surfaced there. The record contains no evidence that the sensor corresponding to the pin was ever located.
Donastorg filed suit against Rainbow, alleging that Rainbow breached its duty of care by failing to keep its premises free from hazardous conditions that it knew or should have known existed. The evidence obtained during discovery showed that every Rainbow employee was trained on how to securely attach the security sensors to merchandise, and the sensors were attached to all or most of the items in the store.[1] Rainbow received new inventory daily, and its employees were continuously attaching security sensors to the newly received items. Although the employees generally attached the sensors in the stockroom where new items were received, they were also authorized to attach them on the storeroom floor during working hours.[2]
Upon the purchase of an item, Rainbow employees would remove the security sensor at the cash registers during the checkout process; however, Rainbow suffered from shoplifters “every day” and “around the clock” who would pry off the sensors and dispose of them without regard.[3] The security sensors were also known to occasionally fall off *217 of dropped items, and there was testimony that stray pins had been found on the floor on previous occasions.[4] Rainbow’s training manual specifically cautioned employees to ensure that the sensor pins were kept off the floor as “[t]hey could be stepped on and cause injury”
The store policy mandated that the floor be swept twice daily — once immediately prior to the store opening and once at closing — and otherwise “if needed.” The floor had been swept prior to the store’s 10:00 a.m. opening on the day in question, approximately six hours before the incident. Rainbow introduced no evidence of any additional policies or procedures requiring that the storeroom floor be inspected or swept during working hours.
Rainbow moved for summary judgment, asserting that it lacked the requisite knowledge of the hazard so as to absolve it of liability The trial court granted Rainbow’s motion, and this appeal follows.
Under Georgia law, “[a]n owner or occupier of land has a legal duty, enforceable by lawsuit, to exercise ordinary care to keep and maintain its premises and the approaches in a condition that does not pose an unreasonable risk of foreseeable harm to the invited public.” American Multi-Cinema v. Brown, 285 Ga. 442 (679 SE2d 25) (2009); see OCGA § 51-3-1 (“Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.”). Nevertheless, a property owner/occupier “is not an insurer of the safety of its invitees. The mere occurrence of an injury does not create a presumption of negligence.” (Citation and punctuation omitted.) Kennestone Hosp., 285 Ga. App. at 394.
Georgia has implemented a two-prong test in order to assess liability to a property owner/occupier on a premises liability claim involving a foreign object: “an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.” Robinson v. Kroger Co., 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997). The record here is undisputed that Rainbow *218 did not have actual knowledge of the existence of the pin that injured Donastorg and that Donastorg lacked knowledge of the pin despite exercising ordinary care for her own safety. Thus, this case turns on whether Rainbow had constructive knowledge of the hazard.
A plaintiff may demonstrate a proprietor’s constructive knowledge of a hazard by showing that “(1) a store employee was in the immediate area of the hazard and could have easily seen the [foreign object] or (2) the foreign [object] remained long enough that ordinary diligence by the store employees should have discovered it.” (Citation and punctuation omitted.) Johnson v. All American Quality Foods, 340 Ga. App. 664, 666 (798 SE2d 274) (2017); see Alterman Foods v. Ligon, 246 Ga. 620, 623 (272 SE2d 327) (1980).
1. Donastorg asserts that constructive knowledge may be inferred because several Rainbow employees were working in the area of the hazard and had the opportunity to discover and remove the pin prior to her injury. The employees’ mere presence, however, is not in and of itself sufficient to survive summary judgment on the issue of constructive knowledge. See Kroger Co. v. Williams, 274 Ga. App. 177, 178 (617 SE2d 160) (2005). Rather, “it must be shown that the [employees were] in a position to have easily seen the [object] and removed it.” (Citation and punctuation omitted; emphasis supplied.) Id. In light of the small nature of the pin, there is no evidence from which to conclude that any Rainbow employee — three of whom were four to five feet away and behind cash registers, and the other of whom was on the side of Donastorg opposite the pin — would have been in a position to have easily seen and removed it. It follows that Donastorg has failed to create a jury question as to this issue. See id. at 178-179; Bolton v. Wal-Mart Stores, 257 Ga. App. 198 (570 SE2d 643) (2002).
2. The evidence does create a jury issue, however, as to whether Rainbow had constructive knowledge of the hazard using the second prong of the test, i.e., whether the pin had remained on the floor long enough that ordinary diligence by the store employees should have discovered it.
Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the plaintiff need not show how long *219 the hazard had been present unless the owner has demonstrated its inspection procedures.
(Citation and punctuation omitted.) Food Lion v. Walker, 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008). The reasonableness of an inspection procedure depends on the nature of the business, the size of the store, and the number of customers. See id. Significantly,
summary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron’s alleged injuries.
(Citations omitted.) Burnett v. Ingles Markets, 236 Ga. App. 865, 867 (514 SE2d 65) (1999).
There is no doubt, as illustrated by the express warning in its training manual, that Rainbow was aware of the specific risk associated with stray sensor pins on the floor. Likewise, the abundance of shoplifting activity suffered by Rainbow on a daily basis is well established in the record, as is Rainbow’s admission that shoplifters tended to randomly discard the sensor pins without regard to where they landed. Rainbow employees were authorized to attach the security sensors on the storeroom floor, and the pins were known to become dislodged from dropped items and had previously been found on the floor. Yet Rainbow introduced no evidence of any policy or procedure requiring that the storeroom floor be inspected for safety hazards during working hours.
In light of this evidence, we cannot say that the record before this Court presents “plain, palpable and undisputable proof” that Rainbow’s inspection procedures or cleaning practices “were adequate to guard against known or foreseeable dangers” at the time of Donas-torg’s injury Burnett, 236 Ga. App. at 867.
We must remember that it is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.
*220 (Citation and punctuation omitted.) Kroger Co. v. Schoenhoff, 324 Ga. App. 619, 622-623 (751 SE2d 438) (2013). It follows that the trial court’s grant of summary judgment in favor of Rainbow as to the issue of constructive knowledge under the second prong of the test was erroneous. See Williams v. GK Mahavir, Inc., 314 Ga. App. 758, 761 (726 SE2d 71) (2012) (reversing the grant of summary judgment to hotel defendant because question of fact remained as to whether hotel policy of cleaning the lobby “only if it needed to be cleaned” without any scheduled walk through or inspections for known hazards was reasonable); Gilbert v. Automotive Purchasing Svc., 254 Ga. App. 770, 772 (563 SE2d 906) (2002) (reversing grant of summary judgment to automobile seller after plaintiff slipped and fell on showroom floor because “it is for a jury to determine whether the [store] employee conducted a cursory and inadequate inspection which failed to disclose the substance upon which [plaintiff] slipped and whether the substance was discoverable upon a reasonable inspection”); see also Ramotar v. Kroger Co., 322 Ga. App. 28, 31 (743 SE2d 591) (2013) (physical precedent only) (reversing grant of summary judgment in favor of grocery store because, “[i]n the absence of reasonable inspection procedures, we cannot conclude as a matter of law that [defendant store] lacked constructive notice of the alleged hazard”).
Citing Chastain v. CF Ga. North DeKalb, 256 Ga. App. 802 (569 SE2d 914) (2002), Rainbow asserts that the trial court properly granted summary judgment in its favor regardless of the adequacy of its inspection procedures because of Donastorg’s deposition testimony regarding her inability to see the pin. In Chastain, the plaintiff deposed that in order to see the dribbles of water on the shiny mall floor that caused her to fall, one would have had to bend down and look from a specific angle. Id. at 803-804. In affirming the trial court’s grant of summary judgment to the mall owner and janitorial service responsible for maintaining the floor, the majority of this Court held that, regardless of whether the defendants complied with their inspection policy, “[i]f there is no evidence that the [hazard] could have been discovered during a reasonable inspection, then no inference arises that defendants’ failure to discover the defect was the result of any alleged failure to inspect.” (Citation omitted.) Id. at 803; see also Blake v. Kroger Co., 224 Ga. App. 140, 144 (1) (480 SE2d 199) (1996). In essence, the Chastain majority held that plaintiff’s testimony established no causal connection between plaintiff’s injury and any alleged inaction by defendants as a matter of law. We cannot say the same under the facts presented in this case.
First, it is not immediately clear from Donastorg’s testimony that it was the nature or location of the pin, as opposed to her position *221 relative to it, that rendered it difficult, for her to detect:
[Attorney]: Did you see the pin before you stepped on it?
[Donastorg]: No.

[Attorney]: Okay Was the pin covered by anything?
[Donastorg]: No.
[Attorney]: It was just in the middle of the floor?
[Donastorg]: Yes.
[Attorney]: Do you think if you would have looked down at the floor you would have seen the pin?
[Donastorg]: No, because the rack — the rack is so full, and I’m short, and [my daughter is] short, so we wouldn’t have seen it. It happened, like, right there.
[Attorney]: I know. I understand you didn’t see it, but I guess my question is ... if you looked down at the ground like this, do you think you could have seen it?
[Donastorg]: No.
[Attorney]: I thought you said it was out in the open.
[Donastorg]: No, you wouldn’t have seen it. You tell me if I had looked down in front of me? No, because I was this way when I step backwards on the left side of the floor.
[Attorney]: But there was nothing hiding it?
[Donastorg]: No.
[Attorney]: Okay, if you were looking for the pin, do you think you could have seen it?
[Donastorg]: No.
Properly construing this testimony in the light most favorable to Donastorg, we cannot definitively conclude that it equates to an admission that even an employee who was fully aware of the hazards associated with stray sensor pins would not have been able to see and identify the hazard during a reasonable inspection of the storeroom floor. See Samuels v. CBOCS, Inc., 319 Ga. App. 421, 424 (742 SE2d 141) (2012) (distinguishing Chastain and reversing the grant of summary judgment to restaurant because it failed to show an inspection had been conducted and a factual question remained as to whether the foreign object would have been difficult to see during a reasonable inspection); Walker, 290 Ga. App. at 577 (2) (distinguishing Chastain and rejecting store’s assertion that it was entitled to summary judgment due to the difficulty in detecting the foreign substance when it “was on notice of the risk of the particular hazard that caused [plaintiff] to fall”).
*222 Moreover, we cannot say as a matter of law that there is no causal connection between Donastorg’s injury and Rainbow’s lack of an inspection procedure to identify and remove known potential hazards from the storeroom floor during working hours. See generally Samuels, 319 Ga. App. at 424; Walker, 290 Ga. App. at 577-578 (3). Compare Rodriquez v. City of Augusta, 222 Ga. App. 383 (474 SE2d 278) (1996) (affirming grant of summary judgment to property owner because an inspection had been done five to ten minutes prior to plaintiff’s fall and the foreign substance “was not visible to the eye”).
With regard to premises liability cases, the Supreme Court has made plain that where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees . . . , summary adjudication is not appropriate.
(Citation and punctuation omitted.) Samuels, 319 Ga. App. at 424.
Accordingly, we reverse the trial court’s grant of summary judgment to Rainbow and hold that genuine issues of material fact remain on the question of constructive knowledge.

Judgment reversed.

Ellington, P J., Dillard, P. J., McFadden, P J., Ray, Branch and Self, JJ., concur. Andrews and Bethel, JJ., dissent.

 The district supervisor deposed that Rainbow’s policy requires that security sensors be placed on all items costing over $10.99, although the co-manager of the subject store deposed that its employees attach sensors to every item of clothing in the store.

 Although the employee to Donastorg’s immediate right was unloading new inventory at the time of the incident, that employee was not deposed, and the record otherwise contains no evidence as to whether she was attaching the sensor pins to the new items.

 During one deposition, the deposing attorney was able to pry open and remove a sensor pin without the need for any tools.

 The sole record evidence related to prior incidents involving the security pins is the store manager’s affirmative response when asked if stray pins had ever before been found lying on the floor, and Donastorg’s deposition testimony that an unidentified Rainbow employee mentioned after the incident that “years ago it happened to another lady.” Nevertheless, construing this evidence, as the dissent does, to mean that “either the store’s customers were exposed to a minimal risk, or the store exercised extraordinary care in keeping the premises safe” does not comport with our standard of review on summary judgment.